## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

NORMA WALKER,

       Plaintiff,

v.                                    CASE NO.   4:14cv375-RH/CAS

NF CHIPOLA, LLC, d/b/a
NURSING PAVILION AT CHIPOLA
RETIRMENT CENTER,

       Defendant.

_____/

## ORDER UPHOLDING THE VERDICT
## EXCEPT ON LOST PAY

This employment-discrimination case arises at the intersection of the

Americans with Disabilities Act and the Family and Medical Leave Act.  The

defendant employer apparently believed, in effect, that for an employee needing

medical leave based on a disability, the FMLA displaced the ADA, so that granting

12 weeks of FMLA leave ended any need for a further accommodation—for

extended leave—under the ADA.  That is not the law.  The employer also asserts

that the plaintiff employee did not ask for extended leave with sufficient clarity and

that her request for just over three months of extended leave was too much.  The

jury reasonably rejected these contentions.  This order denies the employer's

motion for judgment as a matter of law.

The order also denies the employer's motion for a new trial, conditioned

upon the employee's acceptance of a remittitur on the lost-wages portion of the

verdict, and denies the employee's motion for liquidated (that is, double) damages

under the FMLA.

I

The plaintiff Norma Walker was a certified nursing assistant or "CNA"

employed at a nursing facility operated by the defendant NF Chipola, LLC

("Chipola").  Ms. Walker had a shoulder injury—the result of lifting and moving

patients over the years—that was a disability within the meaning of the ADA.  Ms.

Walker needed shoulder surgery.  She asked for and was granted 12 weeks of leave

under the FMLA.  The 12 weeks ended on January 2, 2013.  Ms. Walker was

unable to return at the end of the 12 weeks.  She was given the option to resign or

be terminated.  She resigned.  The resignation left her eligible to be rehired.  All of

this is undisputed.

The evidence about the precise communications between Ms. Walker and

Chipola at that time, and the import of those communications, was disputed.  For

purposes of Chipola's motion for judgment as a matter of law, the evidence must

be viewed in the light most favorable to Ms. Walker, and all reasonable inferences

must be drawn in her favor.  *See, e.g.*, *Howard v. Walgreen Co.*, 605 F.3d 1239 (11th Cir. 2010).  This order sets out the facts that way.

Ms. Walker told Chipola she needed surgery, would be out for about six months, and wished to return as soon as she was able.  She delivered doctor's notes confirming her need to be out and eventually clearing her to return to work on April 10, 2013.  Chipola would have had to be exceedingly dense not to understand precisely what Ms. Walker was asking for: an accommodation of her disability consisting of unpaid leave through her return date—as it turned out, April 10, just over six months after she went out on leave.

Chipola knew Ms. Walker wished to go on extended leave without pay and to return as soon as she was able.  This would have imposed no burden at all on Chipola.  Chipola employed many CNAs and—not surprisingly for such a difficult but low-paying job—had frequent turnover in the position.  All Chipola would have had to do to accommodate Ms. Walker's request was one of two things: first, leave Ms. Walker's name on the roster of employees while providing her no pay or benefits; or second, drop her from the roster but recognize that when she became able to work, she would come back.  Chipola's policy, however, was not to extend leave at the end of an employee's 12-week FMLA period.  So Chipola forced Ms. Walker to resign.  Chipola simultaneously assured Ms. Walker that she would be rehired when she was able.

Chipola did not rehire Ms. Walker.  It denies there were any open positions on the shift Ms. Walker applied for, but Ms. Walker made clear she would accept any shift.  Moreover, the jury was not required to accept Chipola's bald assertion that there were no openings, especially in light of Chipola's failure to present its employment records, which surely would have shown precisely how many CNA openings it had and when they were filled.  The most reasonable view of the record—the view the jury accepted as shown by its answer to a specific interrogatory on this issue—is that Chipola had one or more openings within the scope of Ms. Walker's application that she would have accepted.

Chipola also says it filled any openings from within.  There is factual support for the assertion.  Chipola often advertised positions only in-house, taking applications from its existing employees rather than from outside.  Far from clearing Chipola, this shows just how easy it would have been to accommodate Ms. Walker's disability: Chipola needed only to declare her eligible to apply on the same terms as any existing employee.  As all agreed, Ms. Walker was an excellent CNA and indeed an excellent employee in every respect—every respect, that is, except for her injured shoulder and request for six months off to recover from surgery to repair it.  Absent a retaliatory motive, Ms. Walker would have been rehired.

## II

When Chipola demanded Ms. Walker's resignation, Chipola believed, explicitly or in effect, that an employer who has provided the maximum required leave under the FMLA never has an obligation to accommodate an employee with a disability by providing extended unpaid leave.  That is not the law.

First, nothing in the ADA suggests the requirement to provide a reasonable accommodation is somehow preempted by the FMLA.  Instead, the statutes impose separate requirements, and an employer must comply with both.  The EEOC rules make this clear.  *See* 29 C.F.R. § 825.702.  The EEOC's enforcement guidance gives as an example an employee who needs 13 weeks of leave as a reasonable accommodation for a disability.  The employee is entitled to 12 weeks under the FMLA (during which the employer must continue to provide appropriate benefits including, for example, whatever health insurance the employer had been providing) and an additional one week (not necessarily including benefits) under the ADA, unless providing that additional week would cause an undue hardship. *See* EEOC, *Enforcement Guidance: Reasonable Accommodation and Undue Hardship under the Americans with Disabilities Act*, Example A, included in this record, ECF No. 20-9, at 5.  Nothing in the ADA or the EEOC's guidance suggests that one week is an outer limit.  *See id.*

Second, in *Wood v. Green*, 323 F.3d 1309 (11th Cir. 2003), the court held that an employer who had provided recurring, long periods of leave over many years, as an accommodation for an employee's unpredictable pattern of cluster headaches, could stop at some point; the employer was not required to provide yet another leave period of indefinite duration.  But the court also recognized that leave is sometimes a reasonable accommodation:

> While a leave of absence might be a reasonable accommodation in some cases, Wood was requesting an indefinite leave of absence. Wood might return to work within a month or two, or he could be stricken with another cluster headache soon after his return and require another indefinite leave of absence.

*Id.*, 323 F.3d at 1314.  Citing *Duckett v. Dunlop Tire Corp.*, 120 F.3d 1222, 1226 n.2 (11th Cir. 1997), the court said compelling facts might lead to a different result.

Ms. Walker is a CNA who needed only a single period of leave to accommodate a disability that would be completely cured through a common surgical procedure.  The physician was able to project the return date without even having to give a range; he said Ms. Walker was likely to be out for six months.  As it turns out, the projection was spot on.  With many CNAs and frequent turnover in the position, Chipola could easily have accommodated Ms. Walker's request for extended leave.  These facts are about as compelling as any.

The issue now is only whether, as a matter of law, a total of six months— roughly three months beyond the authorized FMLA leave—is too much.  Drawing

a bright line short of this period would be inconsistent with the statutory requirement for "reasonable" accommodation—a standard that eschews bright lines.

My conclusion, as explained at some length in the summary-judgment ruling set out on the record, ECF No. 40 at 17–21, is that three months beyond the authorized FMLA leave is not necessarily too much.  On the facts of this case—involving an employer with numerous, nearly fungible CNAs, frequent turnover in that position, and an excellent employee who could have come back to work with no need for training or other accommodations—three months was not too much.  Or so a properly instructed jury could find.

III

Ms. Walker says she is entitled to liquidated—that is, double—damages. The FMLA allows the doubling of lost wages, benefits, or other compensation, but not if the employer acted "in good faith" and "had reasonable grounds for believing" its conduct did not violate the FMLA.  *See* 29 U.S.C. § 2617(a)(1)(A); *see also Cooper v. Fulton Cty., Ga.*, 458 F.3d 1282, 1287-88 (11th Cir. 2006).

Ms. Walker is not entitled to liquidated damages here.  There is no controlling authority resolving one way or the other the question whether three months of additional unpaid leave is too much to constitute a reasonable ADA accommodation.  So Chipola was, and still is, entitled to assert its position.  That it

now has lost—at least in the district court—does not mean it did not have reasonable grounds for asserting its contrary position.  Moreover, failing to provide the requested accommodation was, at least in the first instance, a violation of the ADA, not the FMLA.

IV

Chipola says Ms. Walker's lost-pay award exceeded any amount supported by the evidence.  Chipola has moved for a new trial or remittitur of the excessive portion of the award.  On the remittitur issue, the evidence must be viewed in the light most favorable to Ms. Walker.  *See Rodriguez v. Farm Stores Grocery, Inc.*, 5118 F.3d 1259, 1266 (11th Cir. 2008).

Ms. Walker was available to return to work at Chipola as of April 10, 2013.  She accepted a lower-paying, less desirable CNA position at another nursing facility on June 3.  She accepted a higher-paying, more desirable CNA position at yet another facility on August 30.  Ms. Walker testified that she would not have taken a job at Chipola on or after August 30, 2013, even if offered.

Ms. Walker's properly calculated lost pay was at most $3,316.78.  Chipola offered this calculation in its motion to remit the lost-pay award.  In response, Ms. Walker emphasized the role of the jury in calculating damages but was unable to point to any record support for any higher calculation.

No evidence was offered at trial of the amount of any lost benefits.  A reasonable interest rate could not much exceed 10%, so with reasonable interest for the roughly two years from the date of the loss to the date of the verdict, a reasonable lost-pay award could not exceed $4,000.

This order gives Ms. Walker the option to remit the lost-pay award to that amount.  If she does not remit the award, a new trial will be granted on lost pay. *See Sands v. Kawasaki Motors Corp. U.S.A.*, 513 F. App'x 847, 855 n.4 (11th Cir. 2013) ("The Seventh Amendment does require that a plaintiff be given the option of a new trial in lieu of remitting a portion of the jury's award." (*citing Johansen v. Combustion Eng'g, Inc.*, 170 F.3d 1320, 1329 (11th Cir. 1999))).

## V

For these reasons,

IT IS ORDERED:

1. Ms. Walker's motion, ECF No. 58, for liquidated damages is denied.

2. Chipola's motion for judgment as a matter of law, ECF No. 65, is denied.

3. Chipola's motion for a new trial, ECF No. 65, is denied, conditioned upon Ms. Walker remitting the portion of the lost-pay award in excess of $4,000.00.

4.  Ms. Walker must file within 30 days a notice of whether she remits the award.

SO ORDERED on March 28, 2016.

s/Robert L. Hinkle
United States District Judge